CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 0 2 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:05CR00016-3 |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JAMES C. GRAHAM, a.k.a. "Goods," | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with knowingly and intentionally combining, conspiring, confederating, and agreeing, with persons known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with intent to distribute, 50 grams, or more, of mixtures and substances containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a), all in violation of Title 21, United States Code, Section 846; and in Counts Two, Three, Four, and Five with being aided and abetted by others, did knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

On April 28, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts One, Two, Three, Four, and Five of the Indictment.

At this hearing the defendant was placed under oath and testified that his full legal name is James C. Graham, that he was born on June 2, 1974, and that he completed the eleventh grade in high school. The defendant stated that he can read, write, and understand the English language.[1] The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged in Counts One, Two, Three, Four, and Five are felonies and that, if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was further informed that the minimum mandatory sentence for Count One is ten years imprisonment. The defendant was informed that the maximum possible penalty

---

[1] Defendant testified that his ability to read and write are limited.

provided by law for the offenses with which he is charged Counts Two, Three, Four, and Five, is twenty years imprisonment and a fine of $1,000,000, together with supervised release.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;

3

4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea. The defendant asked the court to accept his plea of guilty to Counts One, Two, Three, Four, and Five of the Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

In the summer of 2004, the Front Royal/Warren County team of the Northwest Virginia Regional Drug Task Force ("Task Force") began an investigation into a group of individuals in the Front Royal/Warren County area. The investigation revealed that James C. Graham, John E. Jackson, Gregory A. Newton, and Denis Mitchell were responsible for supplying several individuals in the Front Royal/Warren County area with "crack" cocaine for use and resale.

As part of this investigation, the Task Force conducted an undercover operation involving four

4

controlled purchases from James C. Graham. More specifically, the Task Force made the following controlled purchases from defendant Graham:

July 16, 2004: The Task Force purchased approximately 1 gram of crack cocaine for $100.00 in Front Royal, Virginia.

November 1, 2004: The Task Force purchased approximately ½ gram of crack cocaine for $50.00 in Middletown, Virginia.

November 4, 2004: The Task Force purchased approximately 1 gram of crack cocaine for $100.00 in Middletown, Virginia.

November 12, 2004: The Task Force purchased approximately 1 gram of crack cocaine for $100.00 in Front Royal, Virginia.

Three different Confidential Informants ("CI") were used by the Task Force to make the above noted controlled purchases from defendant Graham. The CI's were searched prior to and immediately after each purchase. In addition, the CI's were surveilled both visually and via a covert transmitter in transit to and from the buy locations as well as during the transactions. Finally, the transactions were captured on audio recordings.

Several witnesses and co-defendants were interviewed during the course of the investigation. Witness #1 advised that in August of 2004, he purchased 9, $50 rocks of crack cocaine from defendant Graham for $200.00.

Witness #2 advised that in the summer and fall of 2004, he purchased crack cocaine from Graham on at least 10 occasions in 1 to 1½ gram increments. This witness further advised that in October of 2004 Graham cooked an ounce of powder cocaine into crack cocaine at the witness's apartment. Finally, this witness advised that Graham was selling approximately an ounce of crack cocaine per week, for

approximately a two month period, when this witness was dealing with him in Front Royal.

Witness #3 is a co-defendant. This witness advised that he had dealt with Graham from May 2004 through November 2004. This witness advised that he sold $500.00 to $1000.00 of crack cocaine per day for Graham. This witness estimated that he and Graham together sold two ounces of crack per week during this time period. Finally, this witness advised that the most crack cocaine that he had ever seen Graham with at one time was 1 to 1½ ounces.

If this case were to go to trial, the Government would produce other witnesses who would likewise testify that they had either made purchases of cocaine from the defendant, or had seen the defendant with crack cocaine, during the period of April 2004 through April 2005.

As outlined above, the total amount of crack cocaine distributed by the defendant Graham and his co-conspirators far exceeded 50 grams.

All of the above noted drug transactions occurred within the Western Judicial District of Virginia.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of his plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One, Two, Three, Four, and Five of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

6

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One, Two, Three, Four, and Five and adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for June 26, 2006 at 2:30 p.m. before the presiding District Judge in Harrisonburg.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: ___[signature]___
United States Magistrate Judge

5-2-06
Date